## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**JOSEPH NEIL BRONSON JR.,**

*Petitioner,*

v.

**UNITED STATES OF AMERICA,**

*Defendant.*

**CIVIL NO. 19-2163 (DRD)**
(Criminal Case No. 15-618 (DRD))

## OPINION AND ORDER

Pending before the Court is Petitioner, Joseph Neil Bronson Jr's (hereinafter, "Bronson") *Pro se Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. See* Docket No. 2.[1] The Government filed a *Response in Opposition* thereto (hereinafter, "Response"). *See* Docket No. 19. Petitioner then replied to the Government's opposition (hereinafter, "Reply"). *See* Docket No. 26.

For reasons stated herein, the Court **DENIES** the Petitioner's Motion under *28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (Docket No. 2).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On September 30, 2015, a Homeland Security Investigations (hereinafter, "HSI") undercover agent, posing as a broker, posted an advertisement on the Internet, promoting an "escort service" specializing in "young girls" in Puerto Rico. *See Affidavit in Support of Criminal Complaint*, Docket No. 1-1 at ¶ 3 in criminal case no. 15-618 (DRD). That same day, Bronson responded to the agent's communication though his email account, zippo235@outlook.com, which also displayed the name "Joseph Bronson." *Id.*, ¶ 4. Through said communication, Bronson

---

[1] A *Motion to File Excess Pages*, *Memorandum of Law in Support of the Motion to Vacate*, an *Affidavit* and multiple Exhibits were attached to the petition. See Docket No. 2-1, 2-2, and 2-3.

expressed "that he liked girls with smaller bodies, who were between the ages of 10 and 12 years of age, for 'full service,' and who were clean and shaved." *Id.* at ¶ 5.

The undercover agent replied that the girls he would be provided for sexual services "are in the less-than-legal age range". Docket No. 2-2 at 4. Bronson agreed to pay a rate of $200.00 an hour for sex with a 12-year-old female and offered his housing location as the place in which the sexual encounter would occur. *See* Docket No. 1-1 in criminal case no. 15-618 (DRD), ¶ 5. Bronson suggested that they meet on October 1, 2015, at 6:30 p.m., west of Arecibo, Puerto Rico, at a fast-food restaurant. *Id.* He provided "a detailed description of the restaurant's location, the description of the vehicle (white Toyota 4-door vehicle)" that he would use for the meeting, as well as a phone number by which the undercover agent could contact him to further coordinate the details of the meeting. *Id.*

On said date, the undercover agent sent text messages to the phone number provided by Bronson confirming the time in which they would meet. *Id.*, ¶ 6. The undercover agent further confirmed that the Petitioner intended to have "normal sex" with the 12-year-old female." *Id.* Confirmation was received by the undercover agent as to all his inquires by text message. Upon confirming Bronson's arrival at the designated place, HIS agents approached the white Toyota 4-door vehicle and placed the Petitioner under arrest. *Id.*, ¶ 7. At the time of his arrest, Bronson had $300.00 in cash and the phone with the same number as the one used for communications with the HSI agent. *Id.* Bronson was advised of his constitutional rights, claimed to understand them, and agreed to speak with the agents. *Id.*, ¶ 8. During the interview, Bronson admitted that he responded to the ad for an escort service made by the undercover agent. *Id.* He also admitted that he was the individual who had sent the emails and text messages received by the undercover agent. *Id.* Each individual message was read aloud to him by an HSI agent and Bronson confirmed that he had

sent and received every message. *Id.* Bronson further recognized that he was present at the site of his arrest because he intended to engage in sexual intercourse with a 12-year-old girl for a rate of $200.00 an hour. *Id*. at ¶ 8. Additionally, the Petitioner admitted having sought out child pornography in the past, and that he preferred young girls because of their innocence. *Id.*

On October 7, 2015, a grand jury returned a single-count indictment against Bronson, charging him knowingly attempting to recruit, entice, harbor, transport, provide, obtain and maintain by any means, in and affecting interstate or foreign commerce, a minor female, whom he believed to be 12 years of age, knowing and in reckless disregard of the fact that the female minor had not attained the age of 18 years and that the female minor would be caused to engage in a commercial sex act, in violation of 18 U.S.C. § 1591(a)(1) and § 1594(a). *See Indictment*, Docket No. 9 in criminal case no. 15-618 (DRD).

On November 3, 2016, the Petitioner entered into a *Plea Agreement*. *See* Docket No. 94 in criminal case no. 15-618 (DRD). Pursuant to the agreement, Bronson would plead guilty to a lesser included offense[2], by stipulating that the would-be victim of sexual trafficking was between the ages of fourteen (14) and seventeen (17) rather than under the age of fourteen (14). Accordingly, his acceptance of responsibility for the lesser included offense made him eligible to a mandatory term of imprisonment from ten (10) years to life, a fine of not more than two hundred fifty thousand dollars ($250,000.00), and a term of supervised release from five (5) to life, pursuant to Title 18, *United States Code,* Section 1591(b)(2) and Title 18, *United States Code,* Section 3583(k). *See Plea Agreement*, Docket No. 94 at 3 in criminal case no. 15-618 (DRD).

---

[2] The penalty for the offense charged in Count One of the Indictment, namely, attempted sex trafficking of children under the age of fourteen (14), is a mandatory minimum term of imprisonment of 15 years. *See Plea Agreement*, Docket No. 94 at 3 in criminal case no. 15-618 (DRD). *Id.* at 3.

Accordingly, the parties agreed that if Bronson is a criminal history category I, the defendant could argue for a variance of his sentence as low as 120 months (10 years) whereas, the Government reserved the right to argue for a term of imprisonment of no more than 162 months (13.5 years). In turn, should Bronson be a criminal history category II, he would argue for a term of imprisonment of no less than 151 months (12.7 years), whereas the Government would argue for a term of imprisonment of no more than 180 months (15 years). *Id.* at 6.

Petitioner ultimately pled guilty to Count One of the *Indictment*. *See* Docket No. 96. "Based upon a total offense level of 33 and a Criminal History Category of 1, the guideline imprisonment range in this case is from 135 to 168 months." Docket No. 112 at 16 in criminal case no. 15-618 (DRD). He was accordingly sentenced to 135 months of imprisonment, the lowest end of the sentencing guideline. *See* Docket No. 112 at 15-16, in criminal case no. 15-618 (DRD).

Unsatisfied with the sentence imposed, Bronson timely appealed. *See* Docket No. 115 in criminal case no. 15-618. However, as the sentence was the minimum potential guideline range and within the range agreed upon in the *Plea Agreement*, and a waiver of appeal had been stipulated, the First Circuit summarily dismissed the appeal on December 12, 2018. *See* Docket Nos. 115-116 in criminal case no. 15-618 (DRD).

On December 27, 2019, the Petitioner filed a timely *Pro se* Motion under *28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* on December 1, 2019. *See* Docket No. 2. He essentially seeks relief for a Fed. R. Crim. P. 11 error, and ineffective assistance of counsel. On May 11, 2020, the Government filed a response to Bronson's § 2255 motion requesting that the Court deny his allegations and his request for an unnecessary evidentiary hearing, arguing that Bronson's guilty plea is valid and, further, that he received

4

effective assistance of counsel. *See* Docket No. 19. Bronson then submitted a Reply. *See* Docket No. 26.

## II.     LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a federal prisoner may petition to vacate, set aside, or correct his or her sentence by showing that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." However, "[r]elief under [§ 2255] is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citations omitted); *see also Knight v. United States*, 37 F.3d 769, 772-73 (1st Cir. 1994).

## III.     LEGAL ANALYSIS

## A.     RULE 11 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

The Petitioner claims that a review of his sentence is warranted pursuant to *Fed. R. Crim. P. 11*, because his plea was entered unknowingly and involuntarily, and because it lacked factual basis. *See* Docket No. 2-1 at 17,70. The Government, in turn, claims that his challenge to the guilty plea is procedurally defaulted as he did not raise this issue on appeal. In any event, the guilty plea was made knowingly and voluntarily, and is supported by factual basis. *See* Docket No. 19.

### 1.     PETITIONER'S CHALLENGES TO HIS GUILTY PLEA ARE PROCEDURALLY DEFAULTED AS HE FAILED TO RAISE THEM ON APPEAL

The Government's first argument is that Petitioner's claims of a *Fed. R. Crim. P. 11* error are procedurally defaulted because he failed to raise them on appeal. *See* Docket No. 19 at 9. Essentially, the Government's argument centers in the fact that the Petitioner had raised an appeal

contesting the sentencing guideline calculations, but never challenged the validity of his plea on appeal. *Id.* "[T]he voluntariness of a guilty plea can be questioned on collateral review under 28 U.S.C. § 2255 only if, and to the extent that, the plea has been challenged on direct appeal". *Id. citing Oakes v. United States*, 400 F.3d 92, 95 (1st Cir. 2005) (*citing Bousley v. United States*, 523 U.S. 614, 621 (1998)). Having correctly argued that Bronson did not raise the issue of his plea's validity on appeal, he has procedurally defaulted on his claim and the voluntariness of his guilty plea may no longer be questioned.

It is further noted that "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Id. citing Bousley*, 523 U.S. at 622 (internal quotation marks and citations omitted). The Government, again relying on *Bousley*, claims that the Court had then regarded "actual innocence" to mean factual innocence. Petitioner fails to properly address this issue, making no reference to cause and actual prejudice, or actual innocence in his *Reply*. *See* Docket Nos. 2 and 26.

Even when construing the § 2255 Petition in light more favorable, than that normally afforded to pleadings drafted by attorneys, a claim of actual innocence cannot be sufficiently identified. His *Reply* relies on Supreme Court precedent that "[because] offenses are statutorily defined, that comparison is appropriately conducted by reference to the statutory elements of the offenses in question." *Schmuck v. U.S.*, 489 U.S. 705 (1989); *see* Docket No. 26 at 2 ¶ A. Bronson then claims the statutory elements of 18 U.S.C § 1591(a) are "mental state force" and "mental state minority status", neither of which is mentioned in the entirety of the statute. *See* Docket No. 26 at 2 ¶ A; *See also* 18 U.S.C. § 1591. Petitioner then continues to make *mens rea* arguments, focusing on the statute's mention of force and calls the physical status of being a minor ("under 18") as

"immaterial [as a statutory element]." *Id.* No interpretation of this argument, even in light most favorable to the Petitioner, provides a showing of actual innocence. Instead, the argument is based on a continued disregard for the would-be victims as he himself described their minority status as an immaterial statutory element. *Id.* Ultimately, the solicitation of a person under the age of eighteen (18) years for a commercial sex act is all that is required to destroy a claim of actual innocence in this case, as this person cannot legally consent to engage in a sexual activity. *See* 18 U.S.C. § 1591(a).

As was correctly argued by the Government, Bronson's claim has procedurally defaulted, and no claim of actual innocence can be factually derived from the *Reply*. *See* Docket No. 26. Petitioner is therefore not entitled to the actual innocence exception to excuse procedural default and this claim is accordingly, **DENIED**.

Moving on, the Court will demonstrate that even if he were entitled to raise the issue under the actual innocence exception, Bronson's challenges against his guilty plea would still fail.

## 2.  THE PLEA WAS MADE KNOWINGLY AND VOLUNTARILY

18 U.S.C. § 1591 criminalizes sex trafficking of children and sex trafficking by force, fraud, or coercion. *See* 18 U.S.C. § 1591. Said statute provides in its pertinent part that "[w]hoever knowingly, in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronized, or solicits by any means a person . . . [who] has not attained the age of 18 years." 18 U.S.C. § 1591(a)(1) & (c). *Id.* An attempt to violate § 1591 shall be punishable in the same manner as if the violation was completed. *See* 18 U.S.C. § 1594(a).

When engaging in sex trafficking with a minor, two (2) offenses exist under the statute establishing a statutory minimum sentence depending on the age of the minor. *Id.* The aggravated

offense applies when the minor being trafficked has not yet reached the age of fourteen (14) at the time of the offense, which carries a statutory minimum sentence of fifteen (15) years imprisonment. *See* 18 U.S.C. § 1591(b)(1).  The lesser offense applies when the minor is above fourteen (14) but under eighteen (18) years of age at the time of the offense and sets a statutory minimum sentence of ten (10) years imprisonment. *See* 18 U.S.C. § 1591(b)(2).

When determining the validity of a guilty plea, the question is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)) Accordingly, courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970).

Here, the Petitioner claims that the *Indictment* was insufficient to support the aggravated offense by challenging the "knowing" and "force, fraud and/or coercion" aspects of the statute. *See* Docket No. 19 at 11. Petitioner relies on a legal distinction between "belief and knowing" to deny his specific intent (to engage in sexual activity with a minor) by raising a lack of a *mens rea* and lack of knowledge as to the minority status of the would-be victim; however, this will not do. *See* Docket No. 26 at 2-3. He establishes a difference in "levels of criminal culpability" by distinguishing the term "knowingly" from "specific intent" and "subjective intent". *Id.* Petitioner believes that the distinction is crucial as "there may be intention without knowledge" and continues to say that the age of the would-be victim (and knowledge thereof) is in dispute and has been in dispute since the moment of arrest. *Id.*

The Petitioner's arguments are unfounded. The Court explains. the first, as correctly argued by the Government, the initial communications between Petitioner and the HSI agent prove that Bronson specifically requested that the escort be within the ages of ten (10) and twelve (12), the agent replied that he would be able to provide him with a twelve (12) year old escort for a commercial sex act, Petitioner affirmed that the age of the girl was acceptable to him, and then took a substantial step by arranging a time and place to meet, then going to this location and further communicating with the agent, confirming his intent to engage in a commercial sex act with a minor. *See* Docket No. 19 at 2-3. Upon his arrest, Bronson was read every communication sent between him and the agent and confirmed that he sent and received all of them. *Id.* He also confirmed his intention to have sex with a twelve (12) year old girl. *Id.* Therefore, an analysis as to the level of culpability is unnecessary here.

In fact, "[i]f a defendant's online conversations with an adult to arrange sex with a minor and a defendant's travel to an arranged meeting place to meet a minor constitute substantial steps toward enticing a minor to engage in illegal sexual activity under 18 U.S.C. § 2422(b), then it follows that these acts also constitute substantial steps toward enticing a minor whom the defendant knows will be caused to engage in a commercial sex act in violation of 18 U.S.C. § 1591(a)." *United States v. Larive*, 794 F.3d 1016, 1020 (8th Cir. 2015). Equally, Petitioner's online conversations with an adult constituted the arrangement of a commercial sex act with a minor, and he then traveled to an arranged meeting, meaning that he knowingly took a substantial step toward the crime of child sex trafficking, and the crime of attempt was completed. *See* Docket No. 19 at 2-3. Moreover, if "a jury could 'reasonably infer that [the defendant] knowingly sought sexual activity, and knowingly sought it with a minor,'" then the fact that "'he was mistaken in his

knowledge is irrelevant.'" *United States v. Wolff*, 796 F.3d 972 (citing *United States v. Meek*, 366 F.3d 705, 718 (9th Cir. 2004)).

The Petitioner fails to recognize that the lesser included offense refers to 18 U.S.C. § 1591(b)(2) rather than the greater offense: § 1591(b)(1). *See* Docket No. 2-1 at 9-17; see also Docket No. 19 at 3. This purported confusion and misunderstanding, is in direct conflict with the remarks he made during the Change of Plea Hearing as to the "constructive interpretation" and the "penalty substitution" where Bronson affirmed his understanding of these elements:

> THE MAGISTRATE: Okay. Can you tell me specifically what is the lesser included offense that he's actually going to be pleading today?
>
> MS. GORBEA: Yes, Your Honor. This defendant was charged with attempted sex trafficking of children (. . .) [t]hat triggers a maximum penalty – a mandatory minimum term, excuse me, of imprisonment of fifteen years and a statutory maximum term of imprisonment of up to life. However, based on the defendant's acceptance of responsibility for a lesser included offense – and the first one he was charged with a penalty of 1591(b)(1). However, based on the defendant's acceptance of responsibility to a lesser included offense, the penalty shall be a mandatory minimum term of ten years and a statutory maximum term of imprisonment of up to life according to 1591(b)(2).
>
> THE MAGISTRATE: So, Mr. Bronson, with that clarification, do you understand the terms of the Plea Agreement and the Supplement?
>
> THE DEFENDANT: Yeah, so far, yeah.
>
> (. . .)
>
> THE MAGISTRATE: And by initialing and signing the Plea Agreement and the Supplement, you intend to tell the Court you understand and agree with everything contained in these documents.
>
> THE DEFENDANT: Correct.
>
> (. . .)
>
> THE MAGISTRATE: Now, as we've already discussed Count 1 as charged in the indictment carries a minimum prison term of fifteen years, up to a maximum of life imprisonment, a fine of up to two hundred and fifty thousand dollars and a supervised release term of at least five years and up to life. Are you aware of that?
>
> THE DEFENDANT: Yes.
>
> THE MAGISTRATE: However, as we've also discussed, as part of your Plea Agreement, you are accepting responsibility for a lesser included offense and the

penalty for that lesser included offense is a minimum prison term of ten years, up to a maximum of life imprisonment, a fine of up to two hundred and fifty thousand dollars and a supervised release term of at least five years and up to life. Are you aware of that?

THE DEFENDANT: Yes.

*See* Docket No. 113 at 9-11 in criminal case no. 15-618 (DRD). Petitioner's claims of an involuntary plea are conflictive to his own statements and affirmations during the Change of Plea Hearing. Let's see.

THE MAGISTRATE: Has anyone made any other promises to you that are not in the Plea Agreement and the Supplement in order to get you to plead guilty?

THE DEFENDANT: Not to my awareness, no.

THE MAGISTRATE: Has anyone threatened you or attempted in any way to force you to plead guilty or offered you money or something else of value in exchange for your plea?

THE DEFENDANT: No.

THE MAGISTRATE: Are you pleading guilty of your own free will because you are in fact guilty?

THE DEFENDANT: Yes.

*See* Docket No. 113 at 11, 16 in criminal case no. 15-618 (DRD). Bronson being given the opportunity to plead to the lesser included offense as part of the Plea Agreement is the "constructive interpretation [of the law]" which he continually referred to in his filings. An issue existed surrounding the age of the would-be victim who was under the age of fourteen (14) rather than above. *See* Docket No. 113 at 9-11 in criminal case no. 15-618 (DRD). The Plea Agreement disregarded the extreme minority age and instead allowed the Petitioner to admit to attempted sex trafficking of a girl between the ages of fourteen (14) and seventeen (17) for a commercial sex act, allowing all parties to "constructively interpret" the law to the Petitioner's benefit. *See* Docket No. 113 at 9 in criminal case no 15-618 (DRD). The penalty substitution refers to the same issue: the penalty he originally would have obtained was substituted with a lesser penalty because he was

allowed to plead to a lesser included offense which had a lower minimum statutory sentence. *See* 18 U.S.C. § 1591(b). Having viewed all circumstances surrounding Petitioner's plea, this claim is **DENIED.**

### 3.    THE PLEA HAS SUFFICIENT FACTUAL BASIS

The *Plea Agreement* contains several admissions that were affirmed both during the arrest and the Change of Plea Hearing. *See* Docket No. 19 at 2-3, and Docket No. 113 in criminal case 15-618 (DRD).  Petitioner admitted that he "(1) 'affected commerce by using an internet-based platform,' (2) '[solicited and] agreed to pay $200.00 an hour for sex with a minor,' (3) 'confirmed the time to meet the agent to further establish he intended to have sex with a female minor,' (4) was 'observed and confirmed to be at the meeting place,' and (5) upon his arrest 'confirmed his intention to have sex with a minor for $200.00 an hour.'" *See* Docket No. 19 at 14. During the Change of Plea Hearing, Petitioner confirmed all of this to be true as follows:

> THE MAGISTRATE: At this point I would like the Government to please summarize the factual basis for the offense and the evidence the Government would present if this case went to trial.
>
> MS. GORBEA: Yes, Your Honor. If this matter had proceeded to trial, the United States would have presented evidence which would have proven beyond a reasonable doubt that on September 30, 2015, [an] HSI agent received and responded to communications from an email address which also displayed the name Joseph Bronson. During the communication, Joseph Bronson wrote to the HSI agent that he liked minor girls with smaller bodies for full service, meaning for full sexual intercourse. In the communications defendant Bronson agreed to pay two hundred dollars an hour for sex with a minor female of less than fourteen years of age and offered a location in which the sexual encounter would take place. Defendant Bronson indicated that the time and place for the meeting (…) Defendant Bronson also provided his contact phone number information and a description of the vehicle where he was going to be. On October 1st, 2015, HSI agent sent text messages to the phone number provided by defendant Bronson confirming the time they were to meet and to further establish that defendant Bronson intended to have sex with a minor female. The HSI agent received various responses from Defendant Bronson that he would be at the agreed location. (…) The HSI agent observed a [vehicle matching the description at] the established meeting place. At approximately 6:31 p.m. the HSI agent sent a text message to the phone number provided by defendant Bronson inquiring, "You there yet," to which the agent

received the reply, "Okay, yeah. I'm here parked in the back". At this time the HSI agent, along with other HSI agents approached the vehicle and placed defendant Bronson under arrest. Defendant Bronson possessed three hundred dollars in cash and the phone with the same phone number as the one with which the HSI agent had communicated. Defendant Bronson was advised of his Constitutional Rights, understood the same and agreed to speak with the HSI agents. During the interview, defendant Bronson admitted that he responded to the advertisement regarding young girl escorts and that he sent, exchanged the afore mentioned emails and text messages. He further confirmed his intention to have sex with a minor female for two hundred dollars an hour. Defendant admits responsibility for the violation of law charged in Count 1 of the indictment and full discovery has been provided in this case, Your Honor.

THE MAGISTRATE: Okay. Mr. Bronson, you heard the prosecutor describe the facts and the evidence that she claims the Government has against you. Do you agree with and admit to all of the facts the prosecutor just described?

THE DEFENDANT: Yes.

THE MAGISTRATE: Okay. How do you plead as to Count 1 of the indictment, guilty or not guilty?

THE DEFENDANT: Guilty.

*See* Docket No. 113 at 23-26 in criminal case 15-618 (DRD). Petitioner does not deny the facts he previously admitted were true, he merely argues that the level of culpability used in the case is improper because "knowingly" was simply described as "doing something on purpose" and a higher level of culpability must be met to prove the facts of the charge, depriving his plea of a factual basis. *See* Docket No. 26 at 3-4.

Bronson claims that the appropriate level of criminal culpability is established by specific intent which requires belief, defined as "a conviction of the truth of a proposition." *Id.* Applying the facts to the terms and definitions provided by the Petitioner, would bring the Court to determine that he displayed and admitted to his specific intention to engage in a commercial sex act with a minor via his communications and his actions. *Id.* There is no doubt that his criminal actions were executed knowingly, willfully and with the belief that he was going to sexually victimize a minor. *Id.*

Bronson argued unawareness that the girl would actually be twelve (12) years old during his arrest and relies on this as a defense to deny that he knowingly and intentionally acted as he did. *See* Docket No. 26 at 4, and Docket No. 2-2, Exhibit 3. Even in light most favorable towards the Petitioner, skepticism that the girl would actually be twelve (12) does not preclude a charge under the aggravated offense or the lesser included offense as the evidence shows that he knowingly and intentionally sought a minor.

Additionally, the Petitioner's purported disavowals in the Change of Plea Hearing (which still shows an admission to the belief that the girl was a minor) are also insufficient to challenge the factual basis of his guilty plea. *See* Docket No. 113 at 10, 22 in criminal case no. 15-618 (DRD). These disavowals are made against the specific age of twelve (12) for his would-be victim, but no disavowal against the belief in the minority status of the girl exists. Instead, there is affirmation that Petitioner knew the girl he solicited was a minor. *Id.* Therefore, Bronson's claim that his plea lacks a factual basis is hereby **DENIED.**

### B.     INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner raises multiple challenges to the competence of counsel's rendered assistance, describing it as ineffective, for having: (1) induced him to plea with false promises, and coerced him to plea with undue influence, (2) failed to adequately explain the essential elements of law/offense, (3) failed to investigate potential defenses, (4) failed to contest the government's interpretation of the offense and terms of the Plea Agreement, (5) failed to request a *Franks* hearing, (6) failed to challenge a sentencing disparity at sentencing, and (7) caused impact against Petitioner via cumulative error. *See* Docket No. 2-1.

To prevail on an ineffective assistance of counsel claim, the defendant bears the burden of proving that (1) "counsel's representation fell below an objective standard of reasonableness", and

(2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland v. Washington,* 466, U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. The first prong of *Strickland* is satisfied when the Petitioner proves that counsel's performance fell under an objective standard of reasonableness. The second prong is satisfied when the Petitioner "show[s] that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. 668, 669. *See also Scarpa v. Dubois*, 38 F.3d 1, 15-16 (1st Cir. 1994).

There is no doubt that *Strickland* also applies to representations outside of the trial setting, which would include plea bargains, sentence, and appeal. *See Missouri v. Frye*, 132 S. Ct. 1399, 1408-10, 182 L. Ed. 2d 379 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012); *Hill*, 474 U.S. at 57; *Bonneau v. United States*, 961 F.2d 17, 20-22 (1st Cir. 1992); *United States v. Tajeddini*, 945 F.2d 458, 468-69 (1st Cir. 1991)(abrogated on other grounds by *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)); cf. *Panzardi-Álvarez v. United States*, 879 F.2d 975, 982 (1st Cir. 1989); *López-Torres v. United States*, 876 F.2d 4, 5 (1st Cir. 1989) (abrogated on other grounds by *Bonneau*, 961 F.2d 17 (1st Cir. 1992)).

To show prejudice in the context of a guilty plea, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Failure to satisfy one of the *Strickland* prongs is fatal and, therefore, a court is free to tackle either prong first. *United States v. Carrigan*, 724 F.3d 39, 44 (1st Cir. 2013).

### 1. PETITIONER'S COUNSEL DID NOT INDUCE A PLEA WITH PROMISES OR COERCION

Petitioner claims that counsel promised him a sentence no longer than the statutory minimum of ten (10) years. *See* Docket No. 2-1 at 18. In reality, counsel sought to negotiate a plea agreement that would grant a sentence no greater than ten (10) years, alleging that it would be "the best he was going to get" because it is the statutory minimum. *Id.* Counsel recommended Petitioner to retain another counsel and try to fare better if he was not satisfied with his results. *Id.* Petitioner followed counsel's advice and hired two (2) private attorneys who o a plea deal of 135 to 168 months' imprisonment. *Id.* Because Petitioner was unsatisfied with the results of their negotiation, he fired them and was promptly represented once again by the original counsel, John Connors. *Id* at 19.

Connors asked Petitioner if he would plead guilty if he was able to negotiate a ten-year (10) sentence; Petitioner agreed. *Id* at 19. Counsel failed to guarantee the ten-year (10) sentence, instead obtaining the guideline sentence of 135-168 months, but entered into an agreement with the government which allowed him to argue in favor of a variance sentence of ten (10) years at the Change of Plea Hearing while the government could argue for a term of up to 162 months. *Id* at 19; *see also* Criminal No. 15-618 (DRD), Docket No. 94 at 6. Counsel repeatedly mentioned that he was confident but did not guarantee or promise an exact ten-year (10) sentence. *Id.* at 19. Petitioner alleges that counsel speaking frankly and/or frustratedly with him amounts to coercion, citing statements such as "the harsh reality is (…) he is going to prison" and "he showed up to pay to have sex with a twelve (12) year old girl and the [Government] has the emails to prove it" as evidence of coercion. *Id.* at 24. The Court finds that this is not coercion or a threat, but a subjective legal analysis of his case and the facts thereof. Counsel admitting that Petitioner had such intent and that the Government had communications that prove it do not constitute "an underlying

loyalty" or "joinder with the state in effort to attain a conviction", it shows acceptance of the facts

leading to Petitioner's arrest and a subjective estimation of how dismal his odds at succeeding at

trial would have been. *Id.* at 24.

During the Change of Plea Hearing, Petitioner assured the Court that counsel did not

promise anything not present in the Plea Agreement, and that he had not been threatened or coerced

into pleading guilty:

> THE MAGISTRATE: Has anyone made any other promises to you that are not in
> the Plea Agreement and the Supplement in order to get you to plead guilty?
> THE DEFENDANT: Not to my awareness, no.
>
> THE MAGISTRATE: Has anyone threatened you or attempted in any way to force
> you to plead guilty or offered you money or something else of value in exchange
> for your plea?
>
> THE DEFENDANT: No.
>
> THE MAGISTRATE: Are you pleading guilty of your own free will because you
> are in fact guilty?
>
> THE DEFENDANT: Yes.

*See* Docket No. 113 at 11, 16 in criminal case no 15-618 (DRD).

Ultimately, during the Sentencing Hearing, counsel was able to secure a sentence at the

lowest end of the sentencing guideline (135 months). *See* Docket No. 112 at 15-16, in criminal

case no. 15-618 (DRD). Counsel being unable to convince the Court to impose a lower sentence

does not mean he was ineffective, as "mere inaccurate prediction does not amount to ineffective

assistance of counsel." *Vega v. United States*, 2006 WL 752999, at 2 (D.P.R. Mar. 22, 2006); *See

also United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990) (collecting cases)).

As the Petitioner has failed to prove that he was induced or coerced by counsel to plead

guilty, this claim is **DENIED.**

### 2.   PETITIONER'S COUNSEL ADEQUATELY EXPLAINED THE ELEMENTS OF THE LAW/OFFENSE

The Petitioner's claim that counsel failed to adequately explain the elements of the offense is unfounded. During the Change of Plea Hearing, Petitioner affirmed that he and counsel had "fully discussed the charge in the case", "discussed the purpose of the Change of Plea Hearing", and that he was "fully satisfied with counsel and the advice and representation" he had received thus far. *See* Docket No. 113 at 4-5 in criminal case no. 15-618 (DRD). Petitioner further proves that he had adequately been explained the elements of the offense in his affidavit where he alleges ineffective assistance of counsel. Therein, Bronson stated that counsel told him "[y]ou are not getting any better than ten (10) [years' imprisonment]", proving he was informed of the statutory minimum. *See* Docket No. 2-3 at 9. Petitioner's affidavit further details discussions between him and counsel surrounding possible defenses, the evidence against him, and the "knowingly" element of the offense as he retorted that he lacked evil motives because "it was only in my head! I had no intention of directing any intention onto an actual minor. In my head, it was a game!" *Id.*

During the Change of Plea Hearing the Petitioner confirmed that he and counsel had fully discussed the case and charge against him. Statements and quotations present in Petitioner's affidavit further support a determination that counsel adequately explained the elements of the law and offense, therefore, Petitioner's claim of inadequate explanations by counsel hereby is **DENIED.**

### 3.   PETITIONER'S COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO ADVISE OF POTENTIAL DEFENSES

Petitioner claims that counsel was ineffective for failing to investigate potential defenses brought to counsel's attention by the Petitioner, such as psychological and philosophical theories surrounding intent, personhood, cannabis induced psychoses, among others. *See* Docket No. 2-3 at 9-10. In response to these defenses, counsel responded that "it'll be too difficult to explain all

of that to a jury", meaning that counsel considered and evaluated the likelihood of success these defenses had and determined they were not worth developing. *Id*. at 10.

The First Circuit has held that strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. *Barrett v. United States*, 965 F.2d 1184, 1193 (1st Cir. 1992). Bronson must defeat a presumption of strategic decision making by counsel for this claim to succeed. *See Strickland*, 466 U.S. at 690. Bronson has failed to submit evidence that defeats the presumption that counsel's decisions (to not pursue certain proposed defenses) were sound and strategic. Petitioner's claim is therefore, **DENIED.**

### 4. PETITIONER'S COUNSEL WAS NOT INEFFECTIVE FOR NOT CONTESTING AN INTERPRETATION OF THE LAW AND TERMS OF THE PLEA AGREEMENT

The Petitioner further claims that counsel was ineffective for failing to object to the interpretation of law and the terms of the Plea Agreement. This claim, however, is unfounded pursuant to the following statements made in the Change of Plea Hearing:

> THE MAGISTRATE: Mr. Bronson, were you able to read your Plea Agreement as well as the Supplement attached to it and fully discuss these documents with your attorney before you signed them?
> THE DEFENDANT: Yes.
>
> THE MAGISTRATE: Did your attorney explain these documents before you signed them?
>
> THE DEFENDANT: Yes.
>
> (. . .)
>
> THE MAGISTRATE: Okay. So, Mr. Bronson, with that clarification, do you understand the terms of the Plea Agreement and the Supplement?
>
> THE DEFENDANT: Yeah, so far, yeah.
>
> THE MAGISTRATE: Okay. All right.
>
> THE DEFENDANT: Without further thought about it.
>
> THE MAGISTRATE: Now, does the Plea Agreement and Supplement, do they contain all of the promises and agreements that you have made with the Government in this case?

THE DEFENDANT: Yes.

*See* Docket No. 113 at 7, 11 in criminal case no. 15-618 (DRD). Petitioner affirmed during the hearing that he had read the Plea Agreement and Supplement, and that he had fully discussed the documents with counsel before signing them. *Id.* Bronson, having fully discussed and then signed the interpretation of law and terms present in the Plea Agreement, cannot raise an objection to his counsel's effectiveness on this issue as any concern he held over the interpretation of law and terms of the Plea Agreement should have been raised during discussions and before signing the Agreement. Petitioner agreed to be bound by the interpretation of law and the terms of the Plea Agreement after discussions with counsel, meaning he believed them to be satisfactory. Therefore, this claim must be **DENIED.**

### 5. **PETITIONER'S COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO REQUEST A *FRANKS* HEARING**

Bronson also claims that counsel was ineffective for failing to request a *Franks* hearing to challenge the arrest warrant's affidavit. *See* Docket No. 2-1 at 51. The Petitioner essentially claims that his Fourth Amendment rights were violated as probable cause for the arrest warrant was established by the alleged omission of a statement made by Bronson during his arrest, where he said he was skeptical that the girl would actually be twelve (12) years old. *Id.* at 52.

For Petitioner to prevail on a *Franks* claim, he must establish by a preponderance of the evidence at a hearing that the affidavit contained a false statement made knowingly or intentionally, or with reckless disregard for the truth. *See Franks v. Delaware*, 438 U.S. at 155-156, 98 S. Ct. at 2676 (1978). Then, setting the false material aside, the movant must also show that the affidavit's remaining content is insufficient to establish probable cause. *Id.*; *see also Scheideman v. State*, 2011 Tex. App. LEXIS 7396 (Tex. App. Sep. 8, 2011) (citing *Hinojosa v. State*, 4 S.W.3d 240, 246 (Tex. Crim. App. 1999)). In the case of an omission, it must be proven

that the omitted information, had it been included, would defeat the establishment of probable cause. *United States v. Cole*, 807 F.2d 262, 267-268 (1st Cir. 1986).

Herein, the Petitioner cannot establish that the affidavit contained false information, he merely contends that it failed to include a lone statement of skepticism of the precise age of a minor he sought out for sexual activity. *See* Docket No. 2-1 at 51. Regardless of the omission, the content of the affidavit is sufficient to establish probable cause. The exclusion of Bronson's statement does not alter the reality of the case, namely: Bronson requested a twelve (12) year old girl for a commercial sex act and agreed to pay $200.00 per hour to do so; he then took a substantial step towards the commission of the offense. These facts are sufficient for a finding of probable cause and the issuance of an arrest warrant.

Since Petitioner does not challenge the truth of the affidavit at all (having described it as a "literally true affidavit") and has failed to show that the inclusion of his lone statement trumps his multiple affirmations of intent to engage in a sexual act with a minor, he has failed to establish that the affidavit contains false information or that the inclusion of the omission would have defeated the finding of probable cause. *Id.* at 52. Bronson cannot prove that counsel was ineffective for failing to request a *Franks* hearing. *See Vieux v. Pepe*, 184 F.3d 59, 64 (1st Cir.1999) (counsel's decision not to pursue "futile tactics" is not considered deficient performance); *Acha v. United States*, 910 F.2d 28, 32 (1st Cir.1990) (stating that failure to raise meritless claims is not ineffective assistance of counsel). *See also United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999) (collecting cases) (holding that there can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument). Petitioner's claim is therefore **DENIED.**

**6. PETITIONER'S COUNSEL WAS NOT INEFFECTIVE FOR NOT ARGUING THAT A SENTENCE DISPARITY MAY HAVE EXISTED**

The Petitioner further claims that his counsel was ineffective for failing to argue that a sentence disparity existed between his sentence and those of other national defendants with similar records and cases. *See* Docket No. 2-1 at 60. Bronson cites four (4) cases in support of his claim, yet these cases do not show a sentence disparity. In *United States v. Cubero-Soto*, 2017 U.S. Dist. Lexis 97616 (D.P.R. June 2, 2017) a defendant pleaded guilty to the same offense as Bronson and was also sentenced to 135 months of imprisonment. The other case laws he relies on involved different offenses; none of those defendants were charged with a violation of 18 U.S.C. § 1591 and cannot be used to establish a sentence disparity for the same crime. *See Wolff*, *United States v. Carrasquillo-Penaloza*, and *United States v. Wilson*. Bronson's lone case of equal or comparable record does not show a sentence disparity; Instead, it affirms the reasonableness of the sentence imposed on him. Petitioner has failed to establish the existence of a sentencing disparity; therefore, this claim is **DENIED.**

**7. COUNSEL DID NOT CREATE CUMULATIVE IMPACT OR PREJUDICE AGAINST THE PETITIONER**

Finally, Bronson claims that counsel's multiple errors have created a cumulative impact or prejudice against him, and that but for these errors, he would have been found innocent. *See* Docket No. 2-1 at 60-61. Yet, the Petitioner has failed to show any error in his numerous claims of ineffective assistance of counsel so he cannot prove that his conviction was impacted or affected by cumulative error. Petitioner's claim of cumulative impact or prejudice is, therefore, **DENIED.**

**C. PETITIONER'S REQUEST FOR EVIDENTIARY HEARING AND DISCOVERY**

Bronson, in his petition for relief, requested an evidentiary hearing and discovery. *See* Docket No. 2-1 at 79. The government argues that the Petitioner is not entitled to an evidentiary hearing as a matter of right. *See* Docket No. 19 at 23; see also *David v. United States*, 134 F.3d

470, 477 (1st Cir. 1998). Essentially, *David* provides that a hearing is not required if "(1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.'" *Id.* Petitioner's motion is inadequate on its face and the allegations held within his motions constantly and consistently contradict the record. Bronson's request for discovery does not satisfy rule 6(b) of the Rules Governing Section 2255. Pursuant to said rule, the Petitioner must provide a reason for the request for discovery. He has failed to do so. *See* Docket No. 2-1 at 79.

Therefore, given the inadequacy of Petitioner's motion, the multiple contradictions therein, and the lack of a stated reason for discovery, the Petitioner's request for an evidentiary hearing and discovery is **DENIED.**

## IV.    CONCLUSION

For the reasons elucidated above, the Court determines that Petitioner's *Pro se* Motion under *28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (Docket No. 2) is hereby **DENIED.** Judgment of dismissal is to be entered accordingly.

It is further ordered that no certificate of appealability be issued in the event that Petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional or statutory right within 28 U.S.C. § 2255(c).

**IT IS SO ORDERED**

In San Juan, Puerto Rico, this 2nd day of August, 2022.

*S/ Daniel R. Domínguez*
Daniel R. Domínguez
U.S. District Judge